## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 03 2017, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of S.T., | August 3, 2017 |
| | Court of Appeals Case No. 49A02-1610-MH-2401 |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Steven Eichholtz, Judge |
| Madison State Hospital, | Trial Court Cause No. 49D08-0901-MH-2739 |
| *Appellee-Petitioner.* | |

**Barnes, Judge.**

# Case Summary

[1] S.T. appeals the trial court's denial of his motion for dismissal of regular commitment. We affirm.

# Issue

[2] S.T. raises one issue, which we restate as whether the trial court properly found Madison State Hospital proved by clear and convincing evidence that S.T. is dangerous to others.

# Facts

[3] In September 2006, thirty-eight-year-old S.T. was accused of molesting a three-year-old boy at his church. The State charged S.T. with child molesting. S.T.'s I.Q. is 57, and he was found incompetent to stand trial. He was committed to the Division of Mental Health and Addiction of the Indiana Family and Social Services Administration, and he was housed at Logansport State Hospital. In January 2009, Logansport State Hospital filed a petition for involuntary commitment of S.T. A physician's statement included with the petition stated that S.T. suffered from "Pedophilia [and] Mild Mental Retardation." Appellant's App. Vol. II p. 19. The trial court granted the petition. S.T. filed a motion for relief from judgment, arguing that service was not proper and that he did not meet the criteria for civil commitment. After a hearing, the trial court denied S.T.'s motion for relief from judgment. In its findings, the trial court noted:

Nancy Maxwell, behavioral clinician 3 and sexual responsibility trainer at Logansport State Hospital, testified concerning her work with [S.T.]. She testified that she has [S.T.] in group and individual therapy once or twice a week, and in sexual responsibility training twice a week. She testified that [S.T.] is definitely a danger to children. [S.T.] has admitted to four other episodes of child molestation. Access to children was gained by [S.T.] through the church daycare center where he spent a lot of time. [S.T.] has admitted to watching child pornography. Ms. Maxwell testified that [S.T.] admitted to "trolling" the Greenwood Mall in search of children. [S.T.] drives a "hot yellow pickup truck" that works as a "kid magnet." Ms. Maxwell testified that the pickup truck was a "grooming tool" and also endearing himself to the parents of young children was another grooming tool. [S.T.'s] preference is for young children because "they don't tell on him."

*Id.* at 97.

[4] Each year, Logansport State Hospital filed annual reports regarding S.T., and the trial court entered orders continuing S.T.'s commitment without hearing. In May 2011, S.T. was transferred from Logansport State Hospital to Madison State Hospital ("Hospital"), and the Hospital began filing the annual reports. The trial court continued extending S.T.'s commitment without hearing. In February 2015, hospital staff determined that S.T. was competent to stand trial. However, the State dismissed the charges against him. S.T. remained at the Hospital under a regular commitment.

[5] In July 2016, S.T. filed a motion for a review hearing and dismissal of the regular commitment. At the review hearing, the Hospital presented the testimony of Dr. Ross Nunes, S.T.'s psychiatrist since 2011, and Dr. Pamela

Gutherie, S.T.'s clinical psychologist. The trial court entered findings of fact and conclusions thereon as follows:

> [S.T.] was originally found incompetent to stand trial, and subsequently committed under a regular commitment on February 3, 2009. His commitment has been renewed annually since that time. On January 14, 2016, Madison State Hospital filed the current periodic report. On February 1, 2016, the court issued an order continuing the regular commitment. The matter was heard by the court on October 19, 201[6]. Dr. Nunes respondent's treatment psychiatrist at Madison State Hospital testified that the respondent suffers from pedophilia, malingering, and mild intellectual disability all of which are mental disorders. During the course of his commitment to state hospitals respondent admits to having reoccurring urges to have sexual contact with minors age 13 or younger. Respondent has chosen for most of his stay not to participate in any of the treatment programs designed to assist him in coping with those urges. The psychiatrist and social worker involved [in] respondent's care testified that they believe he is a danger to others and if released would be highly at risk to satisfy those urges. Their opinion is based on his behavior within the controlled setting of the state hospital. For most of his stay in state hospitals the respondent has been on 15 minute intervals to check his room at night to prevent him from attempting to enter the rooms of other patients to engage in unwanted sexual activity. He consistently acts on urges and impulses to violate the personal space of other patients, and violate rules of the hospital. His [sic] been giving various evaluations which place same in an overall risk/need category of moderate to high.

> The respondent has not engaged in any sexual acts with children under the age of 13 within the controlled hospital setting. However, he continues to attempt to engage in unwanted sexual behaviors with peers. He also routinely violates rules, takes advantage of peers and violates the rights of other patients.

These activities coupled with the risk need assessments support a finding that if not under a commitment in the controlled environment of the state hospital respondent is a danger to others. The court therefore finds:

1.      Respondent is suffering from pedophilia, malingering, and mild intellectual disability which is mental illness as defined in IC 12-7-2-130.

2.      Respondent is a danger to others, as defined by IC 12-7-2-53.

3.      Respondent is in need of commitment to an appropriate facility for [a] period expected to exceed ninety (90) days.

4.      The appropriate facility where Respondent can receive rehabilitative treatment or rehabilitation and care is Madison State Hospital, which is the least restrictive environment suitable for the necessary care, treatment and protection of said person and others.

5.      Each and every form of treatment, and each and every alternative form of treatment has specifically been evaluated by psychiatrists for Respondent.

6.      There is not less restrictive alternative treatment and the treatment selected is reasonable and restricts the Respondent's liberty in the least possible degree.

It is therefore ordered that [S.T.], Respondent, is accordingly committed to the designated facility, where Petitioner is granted an order to treat with medications unless Respondent does not specifically benefit from the medications, until the Respondent is discharged or until the Court terminates the commitment.

Appellant's App. Vol. II pp. 14-15.  S.T. now appeals.

## Analysis

S.T. challenges the trial court's continuation of his commitment.  "'[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake.'" *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000)).  "The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements." *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 425-26, 99 S. Ct. 1804 (1979)).  "To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown 'by clear and convincing evidence . . . . [which] not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but . . . also has the function of reducing the chance of inappropriate commitments.'" *Id.* (quoting *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991), *trans. denied*).

In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, we will affirm if, "'considering only the probative evidence and the reasonable

inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence.'" *Id.* (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988)). This appellate standard of review applies in civil commitment decisions. *Id.*

[8] The Hospital was required to prove by clear and convincing evidence that S.T. "is mentally ill and either dangerous or gravely disabled" and that S.T.'s continued commitment was appropriate. Ind. Code § 12-26-2-5. At least annually, the Hospital is required to file with the court a review of the individual's care and treatment. I.C. § 12-26-15-1. The review must contain a statement of:

> (1) The mental condition of the individual.
>
> (2) Whether the individual is dangerous or gravely disabled.
>
> (3) Whether the individual:
>
>> (A) needs to remain in the facility; or
>>
>> (B) may be cared for under a guardianship.

*Id.*

[9] S.T. challenges the trial court's finding that he is dangerous.[1] Indiana Code Section 12-7-2-53 defines "dangerous" as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." The trial court found:

> [S.T.] continues to attempt to engage in unwanted sexual behaviors with peers. He also routinely violates rules, takes advantage of peers and violates the rights of other patients. These activities coupled with the risk need assessments support a finding that if not under a commitment in the controlled environment of the state hospital respondent is a danger to others.

Appellant's App. Vol. II p. 14.

[10] The Hospital presented evidence regarding S.T.'s dangerousness. Dr. Nunes testified that S.T. has urges to have sexual contact with children, that S.T. has admitted to contact with more than one child, and that S.T.'s daily behaviors demonstrate "the consistent violation of others rights and boundaries." Tr. p. 11. Dr. Nunes believed that S.T. was "dangerous to others by virtue of his ongoing pedophilic urges." *Id.* at 13. He testified:

> [S.T.] has expressed to me repeatedly over time including recently, an ongoing predilection towards having sexual fantasies of young male children. And one of the most common things

---

[1] S.T. does not contest the trial court's finding that he is mentally ill; however, he does dispute the trial court's finding that he suffers from pedophilia. S.T. does not present "detailed argument on this point" because the finding of pedophilia "is not necessary for a finding of mental illness . . . ." Appellant's Br. p. 12. Consequently, we do not address the issue.

that I ask him about is you know, whether or not the medication that I am prescribing him is giving him any degree of relief from those urges, and he explains to me on the one hand yes it give him some degree of relief. But simultaneously he explains to me that his struggle is so significant that when I ask him as I routinely do, what if you were to not be in the hospital at this time what could you do – what steps could you take so that you would not sexually molest a child. And his most consistent answer to me is that he would have to one hundred percent avoid children. Not physically be in their vicinity.

*Id.* at 13. Dr. Nunes also testified that the treatment team has been concerned over S.T.'s treatment of others and that, because of their concerns, S.T. was placed on fifteen-minute checks at night to prevent him from entering the room of another patient and exploiting or harming him or her. S.T. has also repeatedly acted out sexually with his peers at the hospital even when his peers have refused to consent. S.T. has difficulty controlling his impulses, plots "discord between certain peers and himself, certain peers and each other," and difficulty keeping himself on task while avoiding engaging in disruptive behavior. *Id.* at 16. Although sex offender treatment programs are available at the Hospital, S.T. has, until recently, refused to fully participate in the programs. Approximately seven to ten days before the hearing, S.T. "suddenly rearticulated a desire to participate" in the treatment. *Id.* at 18. Overall, however, his participation has been "sporadic" and "minimal." *Id.* Because S.T. has not been "very engaged" in sex offender treatment, he is not able to "articulate triggers or coping mechanisms, or coping skills," and S.T. has shared his concerns that he would reoffend. S.T. has been prescribed a

medication to "diminish testosterone levels" and reduce "sexual aggression." *Id.* Despite the medication, S.T. continues to act out sexually.

[11] Dr. Gutherie testified that S.T. has admitted that "his primary sexual attraction is to young male children." *Id.* at 56. S.T. had recently told Dr. Gutherie that "without further treatment if he were to go back into the community that he would probably reoffend." *Id.* Dr. Gutherie believed, based on some of S.T.'s behaviors, that he also would "probably not respect the boundaries and rights of other people who he is sexually attracted to . . . ." *Id.* at 57. Dr. Gutherie prepared a psychological evaluation of S.T. She found that S.T. was at a "relatively high risk of reoffending." *Id.* at 62.

[12] S.T. argues that Dr. Nunes' testimony, Dr. Guthrie's testimony, and the Hospital's documentation do not prove by clear and convincing evidence that S.T.'s behavior supports a finding of dangerousness. S.T. challenges the basis for the fifteen-minute night time checks, the lack of specific examples of dangerous conduct, and changing standards in the Hospital's definition of inappropriate sexual behavior. S.T. also challenges the risk assessment tools and methodology that Dr. Guthrie used in assessing S.T.'s risk of reoffending. S.T. argues that Dr. Guthrie's "unreasonable opinion about S.T.'s 'urges' reveals a lack of understanding of mental retardation and cognitive disability." Appellant's Br. p. 25. Finally, S.T. argues that his own admissions do not constitute clear and convincing evidence of dangerousness because he is susceptible to suggestion. According to S.T., his "own uncorroborated

admissions to prior criminal conduct have little evidentiary value." Appellant's Reply Br. p. 4.

[13] S.T.'s arguments are merely a request that we reweigh the evidence, which we cannot do. *Civil Commitment of T.K.*, 27 N.E.3d at 273. The Hospital presented clear and convincing evidence that S.T. remains a danger to others. Despite years of treatment and medication to reduce his sexual desires, S.T. continues to act out sexually. S.T. also continues to break Hospital rules, struggles with impulsive behavior, fails to get along with his peers, and fails to fully participate in sex offender treatment programs. His treatment team believed that his inability to control his behavior and lack of progress did not bode well for his ability to control his urges outside of the Hospital setting. The trial court's finding that S.T. is dangerous to others is not clearly erroneous.

## Conclusion

[14] The Hospital presented clear and convincing evidence that S.T is a danger to others. Consequently, the trial court properly continued S.T.'s commitment. We affirm.

[15] Affirmed.

Baker, J., and Crone, J., concur.